DeBRY AND HILTON TRAVEL SERVICES, INC., Plaintiff-Appellant,

v.

CAPITOL INTERNATIONAL AIRWAYS, INC., Defendant-Appellee.

No. 75–1538.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted May 18, 1976.

Decided Sept. 2, 1976.

Robert J. DeBry, DeBry, Landerman, Rodgers & Houser, Salt Lake City, Utah, for plaintiff-appellant.

James A. Kohn, Ginsburg & Kohn, Beverly Hills, Cal., for defendant-appellee.

Before BREITENSTEIN and McWILLIAMS, Circuit Judges, and ZIRPOLI*, District Judge.

ZIRPOLI, District Judge.

This is an appeal from an order of the district court granting summary judgment in favor of defendant-appellee Capitol International Airways, Inc. (hereinafter "Capitol"). The case involves a contract dispute between plaintiff-appellant DeBry & Hilton Travel Services, Inc. (hereinafter "DeBry"), a travel agency, and Capitol, a supplemental air carrier. Jurisdiction in the district court was predicated on diversity of citizenship, 28 U.S.C. section 1332. We have jurisdiction of this appeal pursuant to 28 U.S.C. section 1291.

In the early fall of 1973, DeBry and Capitol entered into a contract under which Capitol agreed to provide four charter flights to Europe beginning in August, 1974. The price of each flight was set at $31,201.50. Shortly thereafter the Arab states instituted an embargo on the sale of oil. As a result, the price of oil rose significantly, including the price of jet fuel used by air carriers such as Capitol. In response to this unexpected increase in its costs, Capitol notified its customers by letter dated

December 4, 1973, that a 15 percent price increase would go into effect for all charters scheduled to leave on or after February 15, 1974. Capitol's customers were given the option of signing new contracts at the higher price or of cancelling their existing contracts. DeBry elected to accept the price increase but reserved its right to sue for breach of contract. The issue before the court is whether the contract between DeBry and Capitol permitted the price increase initiated by Capitol.

The contract between DeBry and Capitol provided:

> The Carrier will charter to the Charterer and the Charterer will take on charter the aircraft described in the Schedule below . . . for the flight, journey, service or period and upon the terms specified in the Schedule subject to the Conditions set out on the back hereof, to which the Charterer hereby agrees and accepts.

.   .   .   .   .

### CONDITIONS

1. This contract is subject to the terms, conditions, rules, regulations, rates and charges in United States Dollars contained in applicable tariffs of the Carrier on file with the Civil Aeronautics Board of the United States in effect on the date of the initial flight departure . . . . .

The district court construed Condition 1 as giving Capitol the power to change its tariffs and thereby change the rates set out in the Schedule when such changes were "necessary and reasonable." Order at 4. It therefore granted Capitol's motion for summary judgment. We affirm.

DeBry contends that the district court erred in interpreting Condition 1 as granting Capitol the right to change its prices by changing its tariffs on file with the Civil Aeronautics Board.[1] According to DeBry, the practice in the air charter industry is for the carrier and charterer to agree on a price for the charter. The carrier then files that price as a tariff and that tariff governs

---

* Of the Northern District of California, sitting by designation.

1. DeBry also argues that Capitol's change in the price of the charter violated 14 C.F.R. section 208.31b(b) which provides:

the price of the charter. Thus it is DeBry's contention that when Capitol signed the contract which set the charter price at $31,-201.50, it impliedly promised to file a tariff in that amount and to leave that tariff unchanged so that the price of the charter described in the contract would remain unchanged. DeBry explains the existence of Condition 1 as covering those situations in which the CAB, not the air carrier, initiates a change in tariffs which affects the price of the charter.

DeBry's argument is unsupported by affidavit or other documentary evidence in the record and is refuted by the affidavit of Frank Sparacino, Capitol's Regional Vice President of Sales. That affidavit explains that supplemental air carriers such as Capitol enter into contracts to be performed many months in the future. For that reason, the air carriers must have a means of protecting themselves from unforeseen circumstances such as the 1973 oil crisis. Condition 1 was included in the contract "so that every customer is put on notice of Capitol's right to deal with unusual conditions which require a change in tariff rates, should such a condition occur." Record at 104. The affidavit concludes by stating:

I am not aware of any custom which precludes a supplemental air carrier from revising its tariff to deal with unusual or unforeseen conditions, such as the 1973 oil crisis. I have never heard anyone— whether a representative of an air carrier, travel agency or chartering group— suggest that there is any such custom. In fact, the custom is to the contrary. Everyone with knowledge of the travel industry knows that an air carrier's charges are determined by its tariff and that it is the tariff in effect on the date of the flight which is controlling.

Record at 105–06.

Actions taken by the Civil Aeronautics Board during the period in question lend credence to the position set forth in the Sparacino affidavit. For example, in a notice to certified air carriers dated March 15, 1974, the Board stated:

The Board recognizes that air carriers have found or may find it necessary to file tariffs incorporating increased rates for charters as well as scheduled transportation in view of increases in operating costs, particularly the cost of aviation fuel.

Because of the special nature of charters, the Board deems it necessary that carriers notify charterers *with whom they have* or are negotiating charter contracts of any proposed rate increases as soon as such increases are proposed. . . .

Record at 125 (emphasis added). Similarly, in Order 74–6–67 dated June 13, 1974 (Record at 123), the Board dismissed the complaints of Intra-American Student Foundation and Elkin Tours, Inc. Those complaints requested suspension of proposed increases in tariffs for domestic and international charters filed by Northwest Airlines, Inc. As in the case at bar, Northwest found that due to the oil crisis it was necessary to increase its tariffs for charter flights shortly after it signed charter agreements with the complainants. The Board declined to take any action against the proposed increases and therefore dismissed the complaints. These two documents are probative of the custom and usage of the industry and lend strong support to the interpretation of Condition 1 adopted by the district court.

Nor does this interpretation permit Capitol to increase negotiated prices at will. All proposed changes in tariffs must be filed with the Civil Aeronautics Board, 49 U.S.C. § 1373(c), and must be "just and reasonable." 49 U.S.C. § 1374(a). Those objecting to the proposed changes may file a complaint with the Board, 49 U.S.C. § 1482(a), and the Board is required to reject changes

No term or condition of the charter contract shall on its face be inconsistent with any provision of the carrier's published tariff. However, DeBry admits that no tariff was on file either at the time the contract was entered

into or at the time Capitol announced the price increase. Accordingly, there could be no inconsistency with a published tariff.

if they are "unjust or unreasonable, or unjustly discriminatory, or unduly preferential, or unduly prejudicial." 49 U.S.C. § 1482(d). Thus the district court's interpretation of Condition 1 does not leave DeBry without a remedy.

Based on the evidence in the record showing that the district court's interpretation of Condition 1 reflects the custom and usage of the supplemental air carrier industry, and based on the protection afforded DeBry by the Federal Aviation Act of 1958, 49 U.S.C. § 1301 *et seq.,* the court concludes that the district court's interpretation of this clause was correct. It therefore would have been improper for the district court to adopt DeBry's argument that it should imply a term in the contract prohibiting changes in tariffs, since such an implied term would have contradicted the express terms of Condition 1. *See* 11 Williston, *Contracts* § 1295 at 34–36 (3d ed. 1968).

The judgment of the district court is affirmed.